NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 170581-U

NOS. 4-17-0581 & 4-17-0826

FILED
January 8, 2020
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| DENNIS KENDALL, | ) | No. 13CF71 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | James R. Coryell, |
| | ) | Judge Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court.
Justices DeArmond concurred in the judgment.
Justice Turner dissented.

**ORDER**

¶ 1    *Held*:   (1) The trial court's first-stage dismissal of defendant's *pro se* postconviction petition is affirmed where defendant's claim of ineffective assistance of his appellate counsel had no arguable basis in law or in fact.

(2) The trial court erred in denying defendant's motion for order *nunc pro tunc* to correct a clerical error and the record is amended to reflect the correct statutory citations under which defendant was convicted and sentenced for armed violence.

¶ 2    In these consolidated appeals, defendant, Dennis Kendall, challenges both the trial court's first-stage dismissal of his *pro se* postconviction petition (appeal No. 4-17-0581) and the court's denial of his motion for a *nunc pro tunc* order to "correct the mittimus" (appeal No. 4-17-0826). We affirm the court's summary dismissal of defendant's *pro se* postconviction petition but find the court erred by denying defendant's motion for an order *nunc pro tunc* and amend the

record to reflect the correct statutory citations associated with defendant's armed violence conviction and sentence.

¶ 3                                    I. BACKGROUND

¶ 4        In January 2013, the State charged defendant with (1) attempt (first degree murder of a peace officer) (720 ILCS 5/8-4(a), 5/8-4(c)(1)(A), 5/9-1(a)(1) (West 2012)) (count I), (2) armed violence (*id.* § 33A-2(c), 33A-3(b-10)) (count II), (3) unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)) (count III), (4) reckless discharge of a firearm (*id.* § 24-1.5(a)) (count IV), (5) unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(d) (West 2012)) (count V), and (6) criminal fortification of a residence or business (720 ILCS 5/19-5(a) (West 2012)) (count VI). The charges were based on allegations that on January 11, 2013, the police went to defendant's home to execute a search warrant and defendant, who was inside the residence and in possession of a firearm, fired a shot that went through his front door and struck police officer Jason Hesse in the leg. With respect to count II, charging defendant with armed violence, the State specifically alleged that "defendant, personally discharged a firearm, a 9mm. Hi-Point Semi-Automatic handgun, a Category [I] weapon, that proximately caused great bodily harm to *** Hesse, while *** [defendant] knowingly possessed more than 30 grams but not more than 500 grams of Cannabis."

¶ 5        In March 2013, defendant filed a notice setting forth his intent to assert the affirmative defenses of the use of force in defense of his person (*id.* § 7-1), dwelling (*id.* § 7-2(a)), and property (*id.* § 7-3) in connection with three of the six charges against him—attempt (first degree murder of a peace officer), armed violence, and reckless discharge of a firearm. In April 2013, he additionally provided notice of his intent to allege the affirmative defense of necessity (*id.* § 7-13)

- 2 -

in connection with the charge of armed violence. Defendant's affirmative defenses were based on allegations that on December 6, 2012, approximately one month before the police executed the search warrant at his residence, defendant was the victim of a home invasion and armed robbery. He maintained that, as a result of the December 2012 incident, he suffered from post-traumatic stress disorder (PTSD), which caused him to reasonably believe that when the police were attempting to execute the search warrant in January 2013, his previous assailants had returned and he was being robbed a second time.

¶ 6        The State filed motions to bar defendant from presenting both his affirmative defenses and witnesses who would provide testimony relative to those defenses. Following a hearing in November 2013, the trial court denied the State's motions with respect to the affirmative defenses of defense of person, dwelling, and property as to counts I, II, and IV, indicating that it would instruct the jury on those affirmative defenses so long as some evidence was presented to support them. The court specifically ruled that defendant would be allowed to present evidence relating to the December 6, 2012, incident and its effect on defendant. Ultimately, the court also ruled defendant would be allowed to present expert witness testimony on PTSD.

¶ 7        In July 2014, the trial court dismissed counts IV and VI on the State's motion, and a jury trial was conducted on the four remaining counts. The State presented evidence that defendant was a convicted felon. Early in the morning on January 11, 2013, the police went to defendant's residence to execute a search warrant. They knocked on defendant's door and announced their presence. The police received no response and struck the door with a steal ram. Defendant testified on his own behalf that he was inside the residence but only heard someone "trying to kick in" his door. He believed someone was trying to break into his residence to kill him. Defendant testified

he "panicked," grabbed his gun, and fired a shot at his front door to "scare off whoever was out there." Evidence showed that the shot defendant fired struck Hesse, a police officer, in the leg. After firing his gun, defendant called 9-1-1 to report what was happening and was informed that the police were at his door. Defendant surrendered to the police, who then searched his residence and found items including a firearm, ammunition, and cannabis.

¶ 8        Defendant also presented evidence regarding the December 6, 2012, incident. On that day, he awoke to a "loud bang" and discovered that three men had forced their way into his home through the front door. The men held him at gunpoint, "ransack[ed] the house," tied him to a chair, and threatened to kill him if he got up or called the police. Defendant asserted that he was "constantly in fear" after the break-in, reinforced his front door, and purchased a firearm. Defendant's clinical psychologist testified that defendant suffered from PTSD and dysthymia.

¶ 9        At the jury instruction conference, the State submitted a jury instruction that defined the offense of armed violence as occurring when a person commits either the offense of possession of cannabis with intent to deliver or possession of cannabis "while he carries on or about his person or is otherwise armed with a handgun." It also submitted an instruction that set forth the elements of the offense as follows:

"To sustain the charge of armed violence, the State must prove the following propositions:

First Proposition: That the defendant committed either the offense of Possession with the Intent to Deliver Cannabis or the offense of Possession of Cannabis; and

Second Proposition: That when the defendant committed either the offense

- 4 -

of Possession with the Intent to Deliver Cannabis or the offense of Possession of Cannabis he was carrying on or about his person or was otherwise armed with a handgun.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

Further, the State submitted an instruction consistent with Illinois Pattern Jury instructions, Criminal No. 28.04 (4th ed. Supp. 2009), addressing a firearm enhancement. That instruction provided, in part, as follows:

"The State has also alleged that during the commission of the offenses of Attempt First Degree Murder and Armed Violence the defendant personally discharged a firearm that proximately caused great bodily harm to another person.

\*\*\*

If you find the defendant is guilty of, Attempt First Degree Murder and Armed Violence you should then go on with your deliberation to decide whether the State has proved beyond a reasonable doubt the allegation that during the commission of the offenses of Attempt First Degree Murder and Armed Violence the defendant personally discharged a firearm that proximately caused great bodily harm to another person."

- 5 -

The defendant did not object to any of the foregoing instructions and each was given to the jury.

¶ 10        During the jury instruction conference, the trial court also rejected defendant's request to provide a self-defense instruction to the jury in connection with the offense of armed violence. The following colloquy occurred between the court and the parties:

"MR. DANIEL NOLL [(DEFENSE ATTORNEY)]: Judge, I understand that the elements of the armed violence [*sic*] is that there is possession of a weapon while committing a felony.

Our position is that there is also a gun enhancement, the discharge of a firearm.

THE COURT: Okay.

MR. DANIEL NOLL: And that discharge of a firearm, when [defendant] shoots it, it was done in self-defense.

THE COURT: Any reply?

MS. WAGONER [(ASSISTANT STATE'S ATTORNEY)]: Your Honor, the discharge of the firearm is not an element of armed violence; that's a separate consideration that has to be determined by the jury which is why we propose it to them now on what we use to call interrogatories, but they get [a] separate verdict form as to that.

The only thing at issue is the elements of armed violence and whether based upon the elements of the offense, there is a justification for a self-defense instruction or additional proposition, and it is not, not when you look at the elements of the offense.

THE COURT: The [State's] objection [is] sustained. The court does not believe that self-defense implies [*sic*] to the offense of armed violence."

The record reflects the jury was instructed regarding self-defense with respect to the offense of attempt (first degree murder of a peace officer), in that, as an additional proposition to that offense, the jury was instructed to determine whether defendant was "justified in using the force which he used." The jury also received a general instruction on the definition of self-defense.

¶ 11    Ultimately, the jury found defendant not guilty of attempt (first degree murder of a peace officer) and that the State had failed to prove that defendant personally discharged a firearm that proximately caused great bodily harm to another person. However, it found defendant guilty of armed violence, unlawful possession of a weapon by a felon, and unlawful possession of cannabis with intent to deliver.

¶ 12    In July 2014, defendant filed a posttrial motion arguing the trial court improperly denied his self-defense instruction as to count II, charging him with armed violence. Defendant also challenged the sufficiency of the evidence against him as to all three of the offenses of which he was found guilty. In August 2014, he filed a supplemental posttrial motion. Defendant argued that he was not proven guilty of armed violence beyond a reasonable doubt because the charging instrument alleged that he personally discharged a firearm and proximately caused great bodily harm to Hesse but the jury "returned a finding that 'great bodily harm' had not occurred."

¶ 13    In September 2014, the trial court conducted a hearing and denied defendant's posttrial motions. In setting forth its ruling, the court addressed defendant's argument that the State had failed to prove him guilty of armed violence as set forth in the charging instrument and determined that the elements of armed violence did not require a showing that defendant discharged a

firearm that proximately caused great bodily harm. The court specifically stated as follows:

> "There is no requirement that the jury find as part of an element of the offense of armed violence that a firearm was discharged by the defendant. So *** that language in the—in the Information is surplusage. So for that reason, the—that basis for trying to vacate the conviction on the armed violence offense is denied."

The court subsequently sentenced defendant to concurrent sentences of 22 years' imprisonment for armed violence, 14 years' imprisonment for unlawful possession of a weapon by a felon, and 4 years' imprisonment for unlawful possession of cannabis with intent to deliver.

¶ 14 Defendant did not file a motion reconsider his sentences, but he did file a direct appeal, arguing (1) the trial court erred by considering his possession of a firearm as an aggravating factor at sentencing when firearm possession was an element of both armed violence and unlawful possession of a weapon by a felon and (2) his conviction and sentence for unlawful possession of cannabis with intent to deliver should be vacated because it was a lesser-included offense of armed violence. *People v. Kendall*, 2017 IL App (4th) 140790-U, ¶ 14. In March 2017, this court vacated defendant's conviction and sentence for unlawful possession of cannabis with intent to deliver and otherwise affirmed the trial court's judgment. *Id.* ¶ 30.

¶ 15 In June 2017, defendant *pro se* filed a petition for postconviction relief. Relevant to this appeal, he argued he was denied his right to effective assistance of counsel due to his appellate counsel's failure to raise meritorious issues for review. Specifically, defendant asserted (1) the trial court misinterpreted the law by finding that discharging a firearm and causing great bodily harm were not elements of the offense of armed violence and denying defendant's request for a self-defense instruction for armed violence, (2) the State failed to prove all of the statutory

elements of armed violence as charged by the State, and (3) he was unable to prepare a defense because the charging instrument "did not set forth the statutory provision or elements" of the armed violence statute under which he was convicted.

¶ 16        In July 2017, the trial court entered a written order dismissing defendant's *pro se* petition as frivolous and without merit. The court reasoned that defendant's appellate counsel was not ineffective for failing to raise the issues identified by defendant as they were without any legal basis. It stated as follows:

> "Armed violence occurs when a person possesses a firearm or other designated weapon while committing a certain felony. There is no element of causing injury with the weapon. The language in the Information, which contained this allegation, sought a sentence enhancement, which was thwarted by the verdict. Likewise, self defense is not available because the offense is committed by possessing the weapon not using it."

¶ 17        In August 2017, the trial court entered an amended sentencing judgment in response to the resolution of defendant's direct appeal and this court's order vacating defendant's conviction and sentence for unlawful possession of cannabis with intent to deliver. The same month, defendant appealed the trial court's dismissal of his *pro se* postconviction petition (appeal No. 4-17-0581).

¶ 18        In October 2017, defendant *pro se* filed a motion for an order *nunc pro tunc* "correcting the mittimus." He asserted that both the trial court's original and amended sentencing judgments set forth an incorrect statutory citation for his armed violence conviction. Specifically, defendant argued that he was convicted of armed violence under section 33A-2(a) of the Criminal

- 9 -

Code of 2012 (Code) (720 ILCS 5/33A-2(a) (West 2012)), which subjected him to a sentencing range of 15 to 30 years' imprisonment (*id.* § 33A-3(a)), but his original and amended sentencing judgments incorrectly reflected that he was convicted of a more serious charge of armed violence under section 33A-2(c) of the Code (*id.* § 33A-2(c)), which would have subjected him to an increased sentencing range of 25 to 40 years in prison (*id.* § 33A-3(b-10)). The same month, the trial court made a docket entry, stating defendant's motion had been reviewed and was denied.

¶ 19    In November 2017, defendant appealed the trial court's denial of his motion for an order *nunc pro tunc* (appeal No. 4-17-0826). Defendant's appeals were consolidated for review.

¶ 20    II. ANALYSIS

¶ 21    A. The Trial Court's Dismissal of Defendant's
Postconviction Petition (Appeal No. 4-17-0581)

¶ 22    On appeal, defendant first argues that the trial court erred by dismissing his *pro se* postconviction petition as frivolous and without merit. He contends his petition stated an arguably meritorious claim that, on direct appeal, his appellate counsel was ineffective for failing to argue that the trial court erred in denying his request for a self-defense instruction in connection with the offense of armed violence.

¶ 23    The Postconviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) "provides a remedy for incarcerated defendants who have suffered a substantial violation of their constitutional rights at trial." *People v. Johnson*, 2018 IL 122227, ¶ 14, 123 N.E.3d 1083. Proceedings under the Act involve a three-stage process. *Id.* "At the first stage, the circuit court must independently review the postconviction petition, without input from the State, and determine whether it is 'frivolous or is patently without merit.' " *Id.* (quoting 725 ILCS 5/122-2.1(a)(2) (2010)). "To be summarily dismissed at the first stage as frivolous or patently without merit, the

petition must have no arguable basis either in law or in fact, relying instead on an indisputably meritless legal theory or a fanciful factual allegation." (Internal quotation marks omitted.) *People v. Boykins*, 2017 IL 121365, ¶ 9, 93 N.E.3d 504. "Meritless legal theories include those theories that are completely contradicted by the record." *Id.* The summary dismissal of a postconviction petition is subject to *de novo* review. *Id.*

¶ 24        Further, ineffective-assistance-of-counsel claims are judged under the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and require a defendant to show that (1) his counsel's performance fell below an objective standard of reasonableness and (2) that a reasonable probability exists that, but for counsel's deficient performance, the result of the proceeding would have been different. *People v. Dupree*, 2018 IL 122307, ¶ 44, 124 N.E.3d 908. "At the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was preju-diced." *People v. Hodges*, 234 Ill. 2d 1, 17, 912 N.E.2d 1204, 1212 (2009).

¶ 25        As stated, defendant argues that his appellate counsel was ineffective on direct ap-peal for not raising any argument that the trial court erred by refusing "to give the self-defense instruction on the armed violence charge." He maintains his counsel's performance was arguably deficient and that he was arguably prejudiced. Defendant points out that he was charged with armed violence under section 33A-2(c) of the Code (720 ILCS 5/33A-2(c) (West 2012)), which requires that an individual personally discharge a firearm and proximately cause great bodily harm to another while committing a non-excluded felony offense. Defendant argues that discharging a firearm and great bodily harm were elements of the offense of armed violence that entitled him to

a self-defense jury instruction and that the court erred by finding, instead, that they were sentence enhancing factors.

¶ 26        Initially, we agree with defendant's contention that discharging a firearm and great bodily harm are elements of the armed violence offense under section 33A-2(c). Pursuant to section 33A-2 of the Code (*id.* § 33A-2)—entitled "Armed violence-Elements of the offense"—a person commits armed violence in one of three ways: when (1) "while armed with a dangerous weapon, he commits any felony defined by Illinois Law, except [certain excluded offenses]" (*id.* § 33A-2(a)), (2) "he or she personally discharges a firearm that is a Category I or Category II weapon while committing any felony defined by Illinois Law, except [certain excluded offenses]" (*id.* § 33A-2(b)), or (3)"he or she personally discharges a firearm that is a Category I or Category II weapon that proximately causes great bodily harm *** to another person while committing any felony defined by Illinois Law, except [certain excluded offenses]" (*id.* § 33A-2(c)). Once a defendant is convicted of armed violence, section 33A-3 of the Code (*id.* § 33A-3)—entitled "Sentence"—sets forth the applicable sentences for armed violence.

¶ 27        Here, the headings and structure of the armed violence statute clearly reflect that the elements for commission of the offense are contained in section 33A-2, while applicable sentences and sentencing factors are contained within section 33A-3. See *People v. Burns*, 2015 IL 117387, ¶ 23, 79 N.E.3d 159 (distinguishing elements of an offense from sentence enhancing factors based on their placement in different statutory subsections); *People v. Neylon*, 327 Ill. App. 3d 300, 305-07, 762 N.E.2d 1127, 1132-34 (2002) (finding the evidence was insufficient to prove the defendant guilty of armed violence (personally discharging a firearm) under section 33A-2(b) because the State did not prove all statutory elements of the offense, including that the defendant

- 12 -

personally fired a gun or that he did so while committing another felony). Accordingly, we find defendant is correct in stating that discharging a firearm and great bodily harm are elements of armed violence under section 33A-2(c) of the Code, which the State must prove beyond a reasonable doubt to obtain a conviction under that statutory subsection.

¶ 28     However, we find it is equally clear that defendant in this case was not convicted of armed violence under section 33A-2(c). Rather, he was convicted under section 33A-2(a), requiring only that the State prove that he was armed with a dangerous weapon and committed a non-excluded felony offense. In particular, although section 33A-2(c) was cited in the charging instrument, the record reflects that the jury was instructed—consistent with armed violence under section 33A-2(a)—that to find defendant guilty of armed violence, the State had to prove that (1) he committed either the offense of possession of cannabis or the offense of possession of cannabis with intent to deliver and (2) when committing either of those offenses, defendant carried on his person, or was otherwise armed with, a handgun.

¶ 29     Moreover, the jury was asked to separately consider whether defendant discharged a firearm and caused great bodily harm to another and found that allegation was *not* proven. Thus, the record shows defendant was convicted of a lesser-included offense and less serious form of armed violence than with which he was originally charged. See *People v. Kennebrew*, 2013 IL 113998, ¶ 47, 990 N.E.2d 197 ("[A]lthough a person cannot be convicted of an offense he has not been charged with committing, a defendant may be convicted of an offense not expressly included in the charging instrument if that offense is a lesser-included offense of the crime expressly charged." (Internal quotation marks omitted.)); *People v. Knaff*, 196 Ill. 2d 460, 472, 752 N.E.2d 1123, 1130 (2001) ("It is elementary that it is unnecessary to allege a lesser-included offense in an

- 13 -

indictment charging an offense of a greater degree when, in order to convict on the greater charge, the prosecution must prove every element necessary for a conviction on the lesser charge.")

¶ 30       Here, with defendant's acquiescence, the jury was instructed regarding the offense of armed violence as set forth in section 33A-2(a). Because *this* form of the offense of armed violence did not require proof that defendant discharged a firearm, the affirmative defense of self-defense was inapplicable. Under the Code "[a] person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force." 720 ILCS 5/7-1(a) (West 2012). Consequently, the affirmative defense of self-defense includes the following elements:

> "(1) unlawful force threatened against a person, (2) the person threatened was not the aggressor, (3) the danger of harm was imminent, (4) the use of force was necessary, (5) the person threatened actually and subjectively believed a danger existed that required the use of the force applied, and (6) the beliefs of the person threatened were objectively reasonable." *People v. Gray*, 2017 IL 120958, ¶ 50, 91 N.E.3d 876 (citing 720 ILCS 5/7-1 (West 2010)).

¶ 31       Armed violence as described in section 33A-2(a) of the Code does not involve the "use of force" by the accused. Where there is no force, there can be no justifiable use of force that would prevent criminal liability.

¶ 32       Under the circumstances presented, it is not arguable that defendant's appellate counsel was deficient for failing to raise the issue of the trial court's rejection of a self-defense instruction for armed violence, nor is it arguable that defendant was prejudiced by such failure. Accordingly, the trial court committed no error in finding defendant's *pro se* postconviction

petition was frivolous and patently without merit and dismissing it at the first stage of postconviction proceedings.

¶ 33              B. The Trial Court's Denial of Defendant's Motion
                   for Order *Nunc Pro Tunc* (Appeal No. 4-17-0826)

¶ 34        On appeal, defendant also challenges the trial court's denial of his motion for order *nunc pro tunc* to correct the "mittimus" to reflect the correct statutory citation under which he was convicted. He argues that he was convicted of armed violence (armed with a firearm while committing a felony) pursuant to section 33A-2(a) of the Code (720 ILCS 5/33A-2(a) (West 2012)) and sentenced accordingly (see *id.* § 33A-3(a)); however, the mittimus, *i.e.* the trial court's amended sentencing judgment, incorrectly reflects that he was convicted of a more serious armed-violence offense (discharging a firearm and causing great bodily harm while committing a felony) pursuant to section 33A-2(c) (*id.* § 33A-2(c)), which would have subjected him to harsher penalties (see *id.* § 33A-3(b-10)). Defendant contends the court should have granted his motion for order *nunc pro tunc*. On appeal, he asks that this court amend the trial court's amended sentencing judgment to reflect the correct statutory citations under which he was convicted and sentenced or remand the cause to the trial court with instructions that it "amend the mittimus."

¶ 35        The State responds that this court lacks jurisdiction to address defendant's appeal. It argues the trial court's denial of defendant's motion for order *nunc pro tunc* was not a final and appealable order at the time it was entered in October 2017, and, as a result, defendant's November 2017 notice of appeal "was subject to dismissal for lack of appellate jurisdiction from the instant that it was filed."

¶ 36        "[T]he use of *nunc pro tunc* orders or judgments is limited to incorporating into the record something which was actually previously done by the court but inadvertently omitted by

- 15 -

clerical error." *People v. Melchor*, 226 Ill. 2d 24, 32, 871 N.E.2d 32, 36 (2007). "It may not be used for supplying omitted judicial action, or correcting judicial errors under the pretense of correcting clerical errors." *Id.* at 32-33. "[A] trial court has authority to enter a *nunc pro tunc* order at any time [(citation)], even after its jurisdiction otherwise has expired." *People v. Strickland*, 2017 IL App (4th) 150714, ¶ 48, 92 N.E.3d 512; see also *People v. Flowers*, 208 Ill. 2d 291, 306-07, 802 N.E.2d 1174, 1183 (2003) (stating a trial court's "continuing power" over a case is "limited to enforcement of the judgment or correction of clerical errors or matters of form so that the record conform[s] to the judgment actually rendered"). "We have this same power to amend the record so as to correct clerical errors." *Id.* (citing Ill. S. Ct. R. 366(a)(1) (eff. Feb. 1, 1994)).

¶ 37 Further, "[a] *nunc pro tunc* order may itself properly be treated as an appealable order, because it would be manifestly unfair to allow a party no avenue in which to seek appellate review of the propriety of such an order." *In re Marriage of Breslow*, 306 Ill. App. 3d 41, 51, 713 N.E.2d 642, 649 (1999); see also *Barnett v. Werner*, 13 Ill. App. 2d 494, 497, 142 N.E.2d 830, 832 (1957) (finding a *nunc pro tunc* order was a final, appealable order); *Johnson v. Target Stores, Inc.*, 341 Ill. App. 3d 56, 67, 791 N.E.2d 1206, 1215 (2003) (finding appellate jurisdiction existed "with respect to [a party's] challenge of the trial court's refusal to enter a *nunc pro tunc* order"). Here, we find appellate jurisdiction exists for reviewing the propriety of the trial court's denial of defendant's motion for an order *nunc pro tunc*.

¶ 38 In this case, defendant's *nunc pro tunc* motion asked the trial court to correct its sentencing judgment to reflect the correct statutory citations associated with his armed violence conviction and sentence. Defendant argues, and the State does not dispute, that he was convicted of armed violence as defined in section 33A-2(a) of the Code and sentenced pursuant to section

33A-3(a); however, both the court's original and amended sentencing judgments reflect a conviction for a more serious form of armed violence under section 33A-2(c) and sentencing under section 33A-3(b-10). A review of the record clearly supports a finding that the court's sentencing judgments set forth the wrong statutory citations. This is the type of clerical error that may be corrected *nunc pro tunc* at any time.

¶ 39        Accordingly, we find the trial court erred by denying defendant's request to amend the amended sentencing judgment to reflect the correct statutory citations associated with his conviction and sentence for armed violence. We amend the amended sentencing judgment to reflect that defendant was convicted of armed violence under section 33A-2(a) of the Code (720 ILCS 5/33A-2(a) (West 2012)) and sentenced for that offense under section 33A-3(a) (*id.* § 33A-3(a)).

¶ 40                        III. CONCLUSION

¶ 41        For the reasons stated, in appeal No. 4-17-0581, we affirm the trial court's summary dismissal of defendant's *pro se* postconviction petition. In appeal No. 4-17-0826, we amend the August 2017 amended sentencing judgment to reflect the correct statutory citations associated with defendant's armed violence conviction and sentence, and affirm the judgment in all other respects.

¶ 42        No. 4-17-0581, Affirmed.

¶ 43        No. 4-17-0826, Affirmed as amended.

¶ 44        JUSTICE TURNER, dissenting.

¶ 45        I respectfully dissent.  In this case, defendant's *pro se* postconviction petition met the "low threshold" of presenting "the gist of a constitutional claim."  *People v. Gaultney*, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 106 (1996).  Thus, this court should reverse the dismissal of defendant's petition at the first stage of the proceedings and remand for further postconviction proceedings.

¶ 46        One of defendant's postconviction claims asserted ineffective assistance of appellate counsel based on counsel's failure to raise the trial court's misinterpretation of the law in making key rulings, which changed the outcome of the trial.  Defendant contended the court erroneously believed discharge of a firearm and great bodily harm were not elements of armed violence under section 33A-2(c) of the Code (720 ILCS 5/33A-2(c) (West 2012)).  He argued the erroneous belief resulted in the denial of his self-defense instruction.  The majority agrees discharging a firearm and great bodily harm are elements of the offense of armed violence under section 33A-2(c).  *Supra* ¶¶ 26-27.  However, it finds defendant was convicted of armed violence under section 33A-2(a), not section 33A-2(c).  *Supra* ¶ 28.  The majority then concludes the affirmative defense of self-defense does not apply to armed violence under section 33A-2(a) and thus it was not arguable appellate counsel was deficient for failing to raise a meritless argument and defendant suffered prejudice from that failure.  *Supra* ¶¶ 31-32.  However, in my view the majority reaches this conclusion without truly addressing the crux of defendant's argument on appeal.

¶ 47        While the jury did find defendant guilty of armed violence under section 33A-2(a), it was instructed it could do so only because the trial court, at the jury instruction conference, mistakenly concluded instructions for an alleged violation of section 33A-2(a) should be given for

a charge under section 33A-2(c). The record also shows the State and defense counsel thought the jury instructions given were proper for armed violence charged under section 33A-2(c).

¶ 48 At the State's request and without objection, the trial court gave Illinois Pattern Jury Instructions, Criminal, No. 11.52Y (4th ed. 2000) (hereinafter IPI Criminal 4th) for the issue instruction on armed violence and then the sentencing enhancement instruction based on personally discharging a firearm and causing great bodily harm contained in IPI Criminal 4th No. 28.03(1). When the State objected to defense counsel's request for a self-defense instruction for armed violence, the State argued discharging a firearm and causing great bodily harm were not elements of the offense of armed violence; but, rather, a separate enhancement consideration to be determined by the jury with a separate verdict form. The court's statements at the jury instruction conference and at the hearing on defendant's posttrial motion indicate the court also believed the discharge of a firearm and great bodily harm were not elements of section 33A-2(c). Indeed, at one point during the hearing on the posttrial motions, the court stated the discharge language in the information was mere "surplusage." However, the record is clear the trial court took this position for the first time at the instruction conference after the close of all the evidence. Additionally, it was only then defendant was first made aware the State and court were in effect changing the elements of the offense against which he must defend himself.

¶ 49 When defendant was arraigned, the court read directly from count II of the State's information. Count II of the information cited section 5/33A-2(c) and tracked its exact language. The information also cited section 5/33A-3(b-10) as the specific penalty provision that applies to a violation of section 5/33A-2(c), even noting the possible minimum and maximum penalties. Moreover, it is obvious from the exchanges between the court and counsel during pretrial motions

and the court's rulings on the State's motions *in limine* the court at those times *did* consider the weapon's discharge and the resultant great bodily harm as elements of the type of armed violence charged in the information. I further note the State did not assert, nor did the trial court find, the instruction submitted to the jury should be given because section 33A-2(a) is considered a lesser-included offense of section 33A-2(c). Additionally, the court did not in any way suggest it convicted defendant on a lesser-included offense.

¶ 50 As the majority notes, the jury ultimately found the State failed to prove defendant personally discharged a firearm that proximately caused great bodily harm to another person. *Supra* ¶ 11. Significantly, from this record, it appears the trial court would have given a self-defense instruction for armed violence had the court not misconstrued the law. Thus, defendant's argument he would have been acquitted of armed violence but for the trial court's error is not frivolous or patently without merit.

¶ 51 While defendant does not expressly mention the jury instructions on armed violence in his postconviction petition, it is the thrust of defendant's argument the trial court's mistaken belief about the elements of armed violence under section 33A-2(c) led to several errors which ultimately resulted in his guilty verdict on armed violence. Arguably, the mistake of law alleged by defendant in his *pro se* postconviction petition tainted all the jury instructions related to armed violence. Although defense counsel did not object to the jury instructions related to armed violence in the circuit court, appellate counsel could have raised the issue under the plain-error doctrine or raised a claim of ineffective assistance of trial counsel. At the first stage of the postconviction proceedings, the petition need only contain a limited amount of detail, and "courts are to take the allegations of the petition as true, as well as liberally construe them." *People v.*

*McDermott*, 2014 IL App (4th) 120655, ¶ 23, 12 N.E.3d 148.  Here, defendant's argument is not based on fanciful factual allegations, nor does defendant rely on an indisputably meritless legal theory.  Accordingly, defendant has made an arguable claim appellate counsel's performance fell below an objective standard of reasonableness by failing to raise errors related to the trial court's mistake of law as to the elements of armed violence, and defendant was prejudiced by appellate counsel's failure to raise the issues.